Next case before the panel this morning is 514-0362, People of the State of Illinois v. Carl David Russ. We have Mr. O'Neill and Ms. Shannon. Mr. O'Neill, you may proceed. Thank you, Your Honor. My name is Lawrence O'Neill and I represent Mr. Russ in this cause. Mr. Russ was convicted of various counts of criminal sexual assault and criminal sexual abuse after a jury trial. The charges all involve allegations by Mr. Russ' 14-year-old stepson, B.B., between June 2008 and September 2008, when they lived together with Mr. Russ' wife and their two young children. I will limit my presentation to argument one. Following the jury trial, Mr. Russ filed pro se motions alleging trial counsel ineffective. Among the allegations, Mr. Russ claimed that counsel had not discussed the discovery materials with him and failed to investigate reports by Dr. Fury and Partridge regarding their examinations of B.B. shortly after the allegations surfaced in September 2008. Those doctor's reports were in the discovery materials. Mr. Russ also affirmed that he had given counsel the names of 16 witnesses to subpoena to testify on his behalf and that counsel did not investigate or interview the witnesses. Defense counsel also filed a motion for a new trial, alleging that the evidence was insufficient to convict Mr. Russ on all the charges. The trial court denied counsel's motion for a new trial, but did not address Mr. Russ' pro se claims of ineffective assistance of counsel. Mr. Russ appealed, and this court remanded the case for a preliminary inquiry hearing under People v. Record to evaluate Mr. Russ' claims of ineffective assistance of counsel. Following the inquiry hearing, the trial court denied Mr. Russ' motions for a new trial, finding that the allegations of ineffective assistance of counsel lack merit and or pertain to trial strategy. This appeals from the trial court's ruling on the preliminary inquiry hearing. I ask this court to reverse the trial report and remand for the appointment of counsel in a full evidentiary hearing on Mr. Russ' claims of ineffective assistance of counsel. Mr. O'Neill, one of his claims was that the doctor who examined the child was not interviewed or no medical was interviewed, correct? That's correct, Your Honor. But the defendant, as I read the briefs and the record, the defendant made a statement saying that he did perform anal penetration. Did I read that wrong? No, you did not, Your Honor. So if you have an admission that he performed it, what use is the medical record going to be? Well, Your Honor, this is not a sufficiency of the evidence argument. We are limited here in making a determination whether, under the framework of Crankle v. Moore, Mr. Russ' allegations show possible neglect of his case by trial counsel, which is independent of what evidence was presented at trial. Well, perhaps I phrased it incorrectly, but the conclusion of the trial counsel was that this was trial strategy. There was no defense presented. You have an admission of anal penetration, and you have an allegation you didn't interview 16 witnesses when everyone indicates that the acts of abuse were unwitnessed. So it seems logical that this was a defense strategy. Your Honor, that is defense counsel. The problem with defense counsel making that predetermination that these witnesses would not benefit Mr. Russ' defense or that the doctor's reports would not benefit the defense is that a counsel's strategic decision, whether to call witnesses or to testify at trial, must be based on some type of investigation or inquiry into what these witnesses could have testified to. The top counsel at the inquiry hearing did not state that he had discussed these witnesses with Mr. Russ and evaluated what those witnesses would testify. And certainly, counsel did not interview any of these witnesses. So we're limited to the question here of whether Mr. Russ' claim showed a possible neglect of his case. And again, this is not an evidentiary matter. This is just showing whether he made the claim here of possible neglect. The allegations must just have potential merit in order to have a further investigation with the aid of counsel. So I'm urging this Court to not consider the evidence that was presented or counsel's explanation at the inquiry hearing was insufficient because he essentially admitted that he made a predetermination that these witnesses would not have because they were not occurrence witnesses. And that is a neglect of the case. A strategic decision must be an informed decision. And there cannot be an informed decision, at least at the minimum, counsel had discussed with Mr. Russ what these witnesses had to offer. So again, we don't know what these witnesses may have testified to, but that's in a sense irrelevant to the issue that was presented to this Court. We're asking for an independent evaluation by new counsel to further develop the claims, evaluate the case. And all Mr. Russ had to show here at this stage was that counsel possibly neglected his case. And I submit to your honors that counsel's statement and admissions at the preliminary inquiry hearing that he did not interview these witnesses, did not discuss the witnesses with Mr. Russ, did not discuss the doctor's reports with Mr. Russ, that in itself establishes possible neglect in what merits an independent counsel, new counsel, to further investigate and evaluate the claims and have a full evidentiary hearing on those claims. So, Mr. O'Neill, was that clear? Was that evidence actually clear in the record that there was a medical exam? At the inquiry hearing, your honor, it was Mr. Russ claiming that there were medical reports. So he had that in discovery, is that correct? That's Mr. Russ's claim. The defense counsel said that he does not remember the material. Do you remember exactly what was said at that hearing? The defense counsel stated that he does not recall any of the medical records in the discovery and that as far as he can recall, there was not any. Okay. Now, your honor, the important point for that is that at that point, counsel was both representing Mr. Russ and justifying his actions in a manner that was contrary to Mr. Russ's position and allegations. So there was a conflict at that point between what Mr. Russ was saying and what counsel was saying, and that is why under the Krenkel framework, new counsel should be appointed at that point. Now, what is that framework? What language did the Krenkel and the Moore court use for that threshold? Was that potential merit? Potential merit, your honor. Oh, excuse me, possible neglect. Possible neglect. And then other courts have interpreted that to mean that there's potential merit to the claims to warrant the appointment of new counsel, independent counsel, who can provide an independent assessment of the claims. And again, under the Krenkel framework, the reason new attorney must be appointed is that there's a conflict between Mr. Russ and his attorney. They're taking opposite positions here, you know, so only an independent evaluation by new counsel could resolve that conflict. But didn't that court remand it for a Krenkel hearing? Just a preliminary inquiry, your honor. Preliminary inquiry. So now what you're saying is you don't like what was done on the preliminary inquiry. No, I don't like it. Well, the problem is that at the preliminary inquiry, counsel admitted that he neglected the case by not interviewing any of these witnesses or discussing with Mr. Russ what these witnesses would testify to. Well, he said he discussed the discovery. He made the assumption, he made the decision that these were post-occurrence witnesses, and he couldn't remember if there was a medical report. But the trial judge who actually resided over the trial had the opportunity under Taylor, People v. Taylor, to engage in discourse with the defendant, to ask the questions of the defense counsel. So what you're saying is we have the hearing, we have the preliminary inquiry, but you're not happy with the trial judge's decision because you don't believe that that was adequate. I wouldn't frame it that way, your honor. My point is that counsel's statements at the preliminary inquiry hearing did show that he possibly neglected the case. And since possible neglect is a very low threshold, do you believe it requires a hearing? An appointment of counsel. Yes, sir. Thank you, your honor. Ms. Shanahan. Good morning. May it please the court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Just very briefly before I begin my argument on the merits of the case, I want to note that in the defendant's reply brief, Mr. O'Neill points out that even in cases of sexual assault by a family member, the state has to approve penetration. And to the extent that my argument may have indicated anything different than that, I apologize to the court. The focus of my argument was regarding the thrust of the defendant's motion, which is that the state needed to prove force. And the state does not need to prove force when the charge of sexual assault by a family member. So to that extent, if there was any confusion or misstatement by the state, I apologize. However, I don't think that in any way affects the trial case. The trial court's ultimate conclusion at the Crankville hearing, and that's what I'd like to discuss now. As Justice Cates, as you noted, a trial court can determine whether counsel should be appointed at a Crankville hearing by engaging in conversation with the defendant, engaging in conversation with defense counsel, and his own recollection of what happened at the trial. This judge did all three of those things. I would also like to note, and I think Justice Morris may have some, may in some way reflect on your question about this standard that Moore set forth and that other Supreme Court cases have set forth. If there is a determination, if there is no determination on the merits, then as the defendant alleges, the standard of review is de novo. But if there is a determination on the merits, then the standard of review is manifestly erroneous. And that's cited in the state's brief as People v. Tolfrey. Our Supreme Court in a number of Supreme Court decisions has talked about what has to be done at a Crankville hearing. And I want to specifically note People v. Johnson. The Supreme Court says the operative concern for this court is whether the trial court conducted an adequate inquiry and that a trial court's decision not to appoint separate counsel on an ineffective assistance counsel claim will not be considered erroneous if the underlying claim is deemed to be without merit or related to a matter of trial's tactics, and if that is also a Supreme Court decision, People v. Crank. A big thrust of this argument is defendants' claim that Drs. Furry and Parker should have been called. As Justice Cates, as you noted, the defendant admitted that he anally penetrated his stepson. So as you say, that's an admission by the defendant right there. The three things that you can look at in a case like this is whether it's spurious, whether it's not supported by the record, whether it's trial tactics. If the defendant has admitted that he anally penetrated his stepson, then an argument that a doctor would say three months afterwards that there was no evidence of anal penetration and that that's ineffective assistance of counsel for not calling that doctor to say that, that's a spurious argument. That leads to the second part of this, which is that, again, by defendant's own admission, this act of anal penetration occurred early on in the three months of, a little bit more than three months, of sexual assaults and abuse. And he says, if we tried this early on because it hurt, we didn't do it again. So to say that this medical report, which supposedly happened in September, and supposedly says that there's no evidence of any damage to the anus. In September, when this happened in June, people versus Garcia, the expert there, knows how quickly this area heals. And I think that defense counsel even stated this at the hearing. He said, I don't believe this was an issue just due to the time frame between the incidents as alleged to have occurred versus when they were disclosed. So I think that pretty much deals with any allegation about not calling these two doctors. I want to focus on defendant's argument that defense counsel admitted that he neglected this case. I want to point out that this is a public defender, and this is at Crankville hearing six years after he defended Mr. Russ at trial. He did not say that he didn't investigate the medical report. He said he didn't remember them. And I think that's hugely different. It's especially important when you go on to what the defendant talks about at the hearing. Now, in the reply brief, defendant cites to a portion of the transcript from the Crankville hearing where the public defender said he didn't remember a medical report, and the defendant says that the public defender didn't go over the medical exam with him. But at least according to my notes that I took when reviewing this record, the record goes on on C-463. It goes on to disclose defendant's statement that he talked to the public defender about calling the doctors, but the public defender told him the state would call in better doctors. Specifically, one presumes since Dr. Swofford was disclosed as an expert witness, not called but disclosed, the state might have called her if they had gotten into some sort of battle of the experts, so to speak. He goes on to say, to talk about the public defender's decision after talking to him that it would not be beneficial, that strategy. That strategy to say, I mean, we don't have the public defender saying this is my strategy. We have defendants saying, my attorney told me this was the strategy, which was we have the admission that I already did it. We have an exam three months after the fact, and we have the fact that we could get into worse trouble because one can easily imagine that it would be pretty easy to get Dr. Furry and Dr. Cartridge to admit that an exam three months post assault would not reveal much. So given the passage of time here, and given the fact that the public defender did not admit to not investigating, but only said he didn't remember, and given the fact that the defendant did remember, I mean, this is an important case to him. It's his only case. This happened in 2008, and certainly he has a very good reason to remember every little thing that happened in this case. For the public defender to say six years afterwards that I don't remember it cannot be turned into a I didn't even look into it, I didn't investigate it. But what about the fact he can't remember? I mean, you have a very low threshold here. So is that really good enough that he just doesn't remember? I think it is given the fact that the defendant did remember, and the defendant does remember that they did talk about it, and the defendant does remember that why the reason that his attorney gave him for not calling it. What about the 16 witnesses? Okay. We've already discussed two of them, Dr. Curry and Dr. Partridge. The third one was Timothy Quinn. He was a computer expert. He was made to testify for the state that the defendant had pornography on his computer. He was unavailable. I believe he was maybe in the military and overseas. The fact that you know that, though, suggests an investigation. Somebody knew about it. He's disclosed in the record as a state, you know. No, but I mean, for the defendant to say there was no investigation, the record seems to say, at least when the trial counsel explained it, I'm going to finish my question, that there was nobody who actually could have been in a position to witness. I made the conclusion not to call these because they weren't occurrence or available at the date when the supposed incidents occurred. It wouldn't have been probative. To me, that sounds like an investigation. I mean, it sounds like he at least did something with these witnesses. I think he certainly did. And the next four witnesses that is on the defendant's list are people that did testify at trial. And then we're left with nine that the names are in his motion. But when asked by the trial court, what would they testify to? He says, I just think I had the right to present it. And that's his only answer. So when we've got support in the record for seven of these 16 witnesses and we have no idea, I mean, I think the defendant, even pro se, has some obligation to say, they would testify to. Okay. Thank you, Mr. Anderson. And Mr. O'Neill, to the extent we allow her additional time, we'll give you that benefit too, should you require it. Thank you, Your Honor. Regarding the standard of review, under the Franco framework in an inquiry hearing, the standard of review is deniable. And counsel argues that there was a factual finding. And I submit that the standard of review should be deniable. That's the appropriate standard, because there was no underlying, there was no factual finding underlying claims of ineffective assistance from counsel. The standard of review should be deniable. As to the judge looking into the matters, questioning defense counsel, excuse me, Mr. Russ and defense counsel, all we need to show here was that there was possible neglect. And I submit that the defense counsel's statement on page 464 and 65, that he admitted that he made a decision on the 16 witnesses because they were not occurrence witnesses. The problem with counsel's explanation is that he didn't indicate that he had discussed the witnesses with Mr. Russ  And that in itself shows that counsel made a predetermination that these witnesses would not help because they were not present during the scene. Do you dispute Ms. Shanahan's explanation that was just given, that two of them were the doctors, one was a computer technician, some of them actually testified out of these 16? I do not dispute that, Your Honor. And when asked about the remaining nine, he couldn't give an explanation of really what they were going to say? I don't, well... That was his testimony or a nice summary of it? Well, I don't think the counsel indicated clearly enough... I'm talking about what the defendant told the court. Well, I don't think he indicated clearly enough that he had a discussion about the individual names of the witnesses and what they could provide. I'm making... Whose idea is it, do you think, to come up with witness names and what they would do for your defense? It's not the lawyer's job, is it? No, no, Mr. Russ gave counsel 16 names. But as far as a sufficient investigation as to whether these witnesses would have helped Mr. Russ's case, I believe the record does not establish that counsel and Mr. Russ discussed these witnesses in a sufficient way for counsel to make a determination that they would not help his case. What about the $200 issue? Do you concede that the state's position is correct? Yes, Your Honor. Am I required, if I can speak to that?  I just want to make sure that's correct. Counsel, opposing counsel mentioned that the counsel stated that he did not remember the medical reports, and Mr. Russ testified, he stated at the preliminary inquiry hearing, that they were there. Now, that in itself merits further investigation. Counsel does not remember. If they were in the reports, in the discovery, and counsel did not look into them in any way, then that is a neglect of the case. So in itself, counsel's not remembering these reports at this preliminary inquiry hearing justified the appointment of new counsel for an independent evaluation of their claim. And in summary, I submit to this Court that this is a low threshold of possible neglect. All Mr. Russ had to show was that these allegations have potential merit. And under this threshold, Mr. Russ was entitled to an independent evaluation by a new counsel, notwithstanding the evidence that was presented at the trial against him. That's all I have. Thank you. Senator. Okay. Thank you, counsel. This matter will be taken under advisement, and a disposition will be issued in due course. Thank you very much.